**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| WALESKA MARTÍNEZ GUTIÉRREZ,<br><br>        Plaintiff,<br><br>                v.<br><br>    LEYDA BATIZ; et al.,<br><br>        Defendants. |

CIVIL NO. 03-2212 (JAF)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JOSÉ A. FUSTÉ**
**UNITED STATES DISTRICT CHIEF JUDGE:**

**COME NOW,** Defendants, FERDINAND MERCADO, LEYDA BATIZ, and MARCOS VÉLEZ GREEN, in their personal capacities, and JOSÉ M. IZQUIERDO ENCARNACIÓN, in his official capacity as Secretary of State, through the undersigned attorney, and very respectfully state and pray as follows:

### I.    INTRODUCTION

This is a civil rights case under 42 U.S.C. § 1983 for the alleged deprivation of plaintiffs' rights guaranteed by the Constitution and Laws of the United States of America.

Plaintiff seeks redress for Defendants' allegedly violation of her constitutional rights protected under the First, Fifth and Fourteenth Amendments of the Constitution of the United States of America.    She also seeks an injunctive relief

enjoining Defendants from alleged retaliatory and discriminatory actions. According to the averments stated in the complaint, Plaintiff allegedly suffered adverse employment actions based on her political affiliation.

Original jurisdiction of this Court was invoked under 28 U.S.C. § 1331, 1343 (3) & (4). Plaintiff also invoked supplemental jurisdiction under 28 U.S.C. § 1367 for state law claims under Section 1, 6 & 7 of Article II of the Constitution of the Commonwealth of Puerto Rico; the Puerto Rico Public Personnel Law (3 L.P.R.A. § 1301, et seq.), and Article 1802 of the Civil Code of Puerto Rico (31 L.P.R.A. § 5141).

Plaintiff also seeks monetary and punitive damages, attorney fees, costs, litigation expenses and pre-judgment interests.

However, as will be discussed herein, **this is a frivolous complaint that should be dismissed pursuant to Fed. R. Civ. P. 56**. The evidence is clear that, among other issues: (1) Plaintiff always acted in an insubordinate fashion, even with the NPP administration since 2000; and (2) that there was never an adverse employment action against the Plaintiff. Conversely, the evidence shows the Plaintiff erratic and defiant behavior in the workplace. Let us see in Defendants Statement of Uncontroverted Material Facts (or "**SUMF**"), and its legal

explanation.

## II.   STATEMENT OF UNCONTROVERTED MATERIAL FACTS ("SUMF").

At the SUMF included in the "Motion Requesting Leave to File Motion for Summary Judgment and Memorandum In Support Thereof Tendered Pursuant To The Proposed Pre Trial Order" ("Motion for Leave"), which was filed on February 6, 2005, Defendants set forth the factual background of this case. For the purpose of concision, we incorporate by reference all the previous factual explanation made in such document, as if were made herein. There is little need to add any other details, moreover, since this Court became very familiar with the facts of this case as mentioned at the Joint Proposed Pre Trial Order. Docket No. 58.

## III. LEGAL STANDARD: SUMMARY JUDGMENT

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *see* Lipsett v. Univ. of P.R., 864 F.2d 881, 894 (1st Cir. 1988). A factual

dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for a nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See* Celotex Corp,. v. Catrett, 477 U.S. 317, 331 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. In other words, "[t] the party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." Hinchey v. NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (*citing* Celotex, 477 U.S. at 322-25).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. Anderson, 477 U.S. at 247-48; Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Under Rule 56 (e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but… must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e); see also Anderson, 477 U.S. at 256. Summary judgment exists to "pierce the boilerplate of the pleadings", Wynne v. Tufts Univ. Shc. Of Med., 976 F.2d 791, 794 (1st Cir. 1992), and "determine whether a trial actually is necessary ." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). See also, Ada I. Carmona Rivera v. Commonwealth of P.R., et al., --- F.__----, 04-1318 (JAF), slip op. at page 8-10 (March 31, 2005).

# IV.  DISCUSSION

**IV.1.    Plaintiff's lack of "wrongful" evidence to sustain her claims certainly justifies summary judgment in Defendants' favor, and thus, the dismissal of the Complaint with prejudice.**

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552-2553, 91 L. Ed. 2d 265 (1986)[1], the Court agreed that summary judgment for the defendant was proper when the plaintiff had obtained no evidentiary support for an essential element of the claim. <u>Celotex</u> was an asbestosis case in which the defendant obtained summary judgment by pointing out that the plaintiff had presented no evidence that he had ever been exposed to the defendant's product. The Court agreed that the defendant was not required to prove that the plaintiff had not been exposed. Because the plaintiff would bear the burden of proof at trial, he was obligated to show that he had obtained sufficient factual support for the claims to justify that trial. Because the plaintiff had not done so, summary judgment was appropriate.

---

[1] The U.S. Supreme Court in <u>Celotex</u>, *supra,* at 324, concluded that: **"[O]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose**." [Emphasis added]. *See also,* LOUIS, <u>Federal Summary Judgment Doctrine: A Critical Analysis</u>, 83 Yale L.J. 745, 752 (1974); CURRIE, <u>Thoughts on Directed Verdicts and Summary Judgments</u>, 45 U. Chi. L. Rev. 72, 79 (1977).

Similarly, in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986), the Court held that the special libel standards which would apply at trial also apply to motions for summary judgment, and plaintiffs cannot defeat such motions without presenting evidence of actual malice sufficient to raise a material question on that issue. Although ultimately the proof of malice is an issue for the jury, and although plaintiffs may present evidence that defendants' sources were unreliable, it is proper for a court to grant summary judgment where no reasonable jury could rule for plaintiff on an essential element of the case. This is true even where the issue concerns defendants' state of mind, since the relevant evidentiary standard requires "clear and convincing" proof. Where no evidence of malice was shown, and defendants' affidavit showed that the article in question was researched in good faith, summary judgment was properly granted.

With like token, in Morales Concepcion v. Lluch, 312 F. Supp. 2d 125, 131 (D.P.R. 2004), an employee failed to show that non-renewal of her contract by P.R. Highways Authority ("PRHA") officials' stemmed from politically based discriminatory animus, and she thus failed to establish political discrimination. In that case, the Plaintiff failed to proffer even indirect evidence that her duties were essential and still needed by PRHA

and thus were substituted for by others whose political affiliation was consonant with officials.

Plaintiff in the case at hand made the serious allegation that she had "an abortion" due to the "political discrimination that she suffered". *See* <u>Complaint</u>, at ¶ 18, page 6, Docket No. 1. **This allegation is not only outrageous, but creates a suspicious thinking when there is no evidence to support such assertion, just like occurred in the cases of** <u>**Celotex**</u>**, and** <u>**Anderson**</u>**,** *supra***, and thus, the "indictment" becomes FRIVOLOUS, MERITLESS AND UNFOUNDED.**

In sum, there is no evidence whatsoever that can link Defendants with any "wrongdoing", and there is no need to go to an entire jury trial to waste this Honorable Court's resources for such demonstration, and instead, **summary judgment pursuant to Fed. R. Civ. P. 56 should be entered. SUMF No. 1 thru 63**. The evidence is clear and convincing, as explained in the **SUMF** from **1 thru 63**, that Plaintiff is an irresponsible and controversial individual that always provoked negative incidents at the workplace. <u>Id</u>.

**IV.2.    Plaintiff failed to establish a "*prima facie*" 42 U.S.C. Section 1983 claim.**

To make out a claim of discrimination based on political association, a public employee must prove (1) that the employee

works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision. *See* Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655, at 663 (3rd Cir. 2002); Robertson, v. Fiore, 62 F.3d 596 at 599 (3rd Cir. 1995) (*citing* Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir.1984)).

To establish his *prima facie* case, plaintiff had to show that there is a causal connection linking the allegedly discriminating conduct to their political beliefs. *See* LaRou v. Ridlon, 98 F.3d 659, 662 (1st Cir.1996). Circumstantial evidence may be sufficient to support a finding of political discrimination, Estrada-Izquierdo v. Aponte Rogue, 850 F.2d 10, 14 (1st Cir.1988); but, plaintiffs must make a fact-specific showing that a causal connection exists between the adverse treatment and their political affiliation. Avilés-Martínez v. Monroig, 963 F.2d 2, 5 (1st Cir.1992). For political affiliation to be a motivating factor behind an adverse employment action, those responsible for the deprivation of constitutional rights must have had knowledge of plaintiffs' political affiliation. *See* Goodman, 293 F.3d at 663-64. *See also* González-De-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir.2004). If plaintiffs

successfully establish their *prima facie* case, then the burden shifts to the defendants who must show that they would have taken the same action regardless of plaintiffs' political affiliation. *See* Rodríguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir.1998); *see also* Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

It is well-settled that "a showing of political animus requires more than merely juxtaposing a protected characteristic--someone else's politics--with the fact that plaintiff was treated unfairly." González-Piña v. Rodríguez, 407 F.3d 425, 432-433 (1st Cir.2005)(*citing* Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir.2000)(*internal quotations omitted*)). *See* González-De-Blasini, 377 F.3d at 85 (plaintiffs must point to evidence on the record which would permit a rational fact finder to conclude that the challenged personnel action stemmed from a politically based discriminatory animus).

In the case in chief, the Plaintiff has failed to even establish a *prima facie* case of political discrimination, because clear and convincing evidence exists as to her misbehavior during the NPP administration. **SUMF No. 1-17.** Different memoranda from the year 2000 reflects these facts, as explained *in extenso* at section III.1. of the Joint Proposed Pre

Trial Order (Docket No. 58), and the **SUMF from 1 thru 17**.

The question is very simple, ***how can a person that alleges that is an NPP, and that had serious problems and even accused the NPP administration of "persecution", can even argue that she is now also being "persecuted" by the PDP administration?*** The answer is also very simple, <u>**there is not a political discrimination issue here**</u>, **simply are different negative incidents provoked by the same Plaintiff**. *See* **SUMF No. 16.**

Because the proffered evidence fails to establish a *prima facie* case of political discrimination, this Honorable Court should **GRANT** summary judgment pursuant to Fed. R. Civ. P. 56, in Defendants' favor.

### IV.3.    Plaintiff failed to demonstrate that her work environment was "inferior", which Defendants deny.

To succeed on his "inferior" work environment claim, a Plaintiff has to show, by clear and convincing evidence, that he was subjected to an unreasonably inferior environment. <u>Agosto-de-Feliciano v. Aponte-Roque</u>, 889 F.2d 1209 at 1217-20 (1st Cir. 1989). *See also*, <u>Ortiz García v. Toledo Fernández</u>, 405 F.3d 21 at 23-24 (1st Cir. 2005).

If that burden is met, Plaintiff has to show that his political affiliation was a substantial factor in the

establishment of the unreasonably inferior work environment. *See* Agosto-de-Feliciano at 1218-20.

If she makes this *prima facie* showing, the burden shifts to the defendants to show that they would have acted in the same way regardless of Plaintiff's political affiliation. *See* Mount Healthy, 429 U.S. at 286-87.

A cause of action for the violation of an employee's right to free association exists when a government employer's action is severe enough to cause a reasonably hardy individual to compromise his political associations in favor of the prevailing party or when the employer's action places plaintiff in a situation "unreasonably inferior" to the norm of his [her] position. Cabrero v. Ruiz, 826 F. Supp. 591 at 597 (D.P.R.1993), *aff'd* 23 F.3d 607 at 611 (1st Cir. 1994); Agosto De Feliciano, 889 F.2d at 1217-18; Zayas Rodríguez v. Hernández, 748 F. Supp. 47, 53 (D.P.R. 1990).

In other words, harassment of a public employee for his/her political beliefs violates the First Amendment unless the action is so trivial that a person of ordinary firmness would not be deterred from holding or expressing those beliefs. Pieczynski v. Duffy, 875 F.2d 1331, 133 (7th Cir. 1989); Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).

Very recently, in Rosario-Urdaz v. Velazco, --- F.3d ----, 2006 WL 28217, at __(1st Cir. 2006), the First Circuit Court of Appeals determined that a public employee had no § 1983 cause of action based on alleged harassment by coworkers, including former subordinate who had allegedly thrown food at her, been reprimanded and transferred out, then transferred back and criticized employee in letter to superior who ultimately discharged her; unless coworkers carried on a substantial campaign of harassment, instigated or knowingly tolerated by superiors, their acts would not constitute mis-exercise of government power at which § 1983 was aimed. *See also*, Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir.1987); *see also* Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir.1992), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993).

A single insult by coworker with no supervisory power is not political discrimination by one exercising official authority. Webber v. Int'l Paper Co.*, 417 F.3d 229, 236-37 (1st Cir.2005)*. See also*, Rosario-Urdaz at __.

In the case at hand, Plaintiff has always complained of the "work environment", even when the NPP administration was in power, alleging "persecution" from the NPP administration. **SUMF No. 16.** Further, the Plaintiff has had a taint record of

misbehavior with her co-workers, fraudulent acts such as manipulating the punch entries, and illegal practices such as disclosing confidential CPA Bar Exam grades. **SUMF No. 50-51.** She even racially discriminated with Mr. José L. Tapia Manso, a security guard from Puerto Nuevo Security, Inc. **SUMF No. 46, 47, 48, and 49.**

Even assuming *arguedo* that she suffered of one single "discriminatory action" –which Defendants deny- such is not enough, and therefore does not constitute a Section 1983 violation. Webber, 417 F.3d at 236-37.

On the other hand, the record is clear that the relocation was for the entire personnel. As explained in **SUMF No. 59, 60, 61, 62, and 63,** Leyda Batiz did the relocation to improve the services of the agency.

Therefore, we are forced to conclude that any claim of "inferior work environment" by the Plaintiff is frivolous and lacks of merit.

**IV.4.    Even assuming *arguendo* –which Defendants deny- that Plaintiff did establish a *prima facie* case, her equal protection and freedom of association claims as well as the evidence based on an alleged "political and First Amendment discrimination" are insufficient as a matter of law.**

At ¶'s number 1, 14, 15, of the Complaint, pages 1 and 5

(Docket No. 1), Plaintiff alleges that her rights to be free from speech discrimination under the equal protection clause of the United States Constitution have been violated.

The standards against which equal protection claims are to be measured, have been stated by the Court of Appeals for the First Circuit in <u>Collins v. Nuzzo</u>, 244 F. 3[d] 246 at 251 (1st Cir. 2001) in the following terms:

> An equal protection claim is found only upon a showing of a "gross abuse of power, invidious discrimination, or fundamentally unfair procedures" or some sort of unjustified disparate treatment with respect to similarly situated applicants. <u>Creative Environments, Inc. v. Estabrook</u>, 680 F. 2[d] 822, 832 n.9 (1st Cir. 1982). Indeed we have warned that "if disgruntled permit applicants" could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court.

Plaintiff's conclusory allegations to the effect that she suffered of political discrimination actions <u>are clearly insufficient</u>. That is the position taken by the Court of Appeals for the First Circuit. In <u>Vázquez v. López Rosario</u>, 134 F. 3[d] 28, 36 (1st Cir. 1998) the Court says:

> However, "[m]erely juxtaposing a protected characteristic-[López's] politics-with the fact plaintiff was treated unfairly is not enough to state a constitutional claim." <u>Acosta Orozco</u> 132 F. 3[d] 97, 101 (quoting <u>Correa-Martínez v. Arrillaga Beléndez</u>, 903 F. 2[d] 49, 58 (1st Cir. 1990). (Internal quotation marks omitted.)

The First Amendment to the United States Constitution protects both political expression and political association. Elrod v. Burns, 427 U.S. 347 at 357 (1976) (quoting Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). Party affiliation may be an acceptable requirement for some types of government employment, in order to promote the State's vital interest in maintaining governmental effectiveness and efficiency. Branti v. Finkel, 445 U.S. 507, 517 (1980). If an employee's political beliefs would interfere with the discharge of his public duties, he may be lawfully removed from his position. Id.

The Supreme Court has addressed the constitutionality of political patronage in a number of cases, holding that non-policymaking public employees are protected from adverse employment decisions based on their political affiliation. Elrod, 427 U.S. at 354; Branti, 445 U.S. at 516; Rutan v. Republican Party, 497 U.S. 62, 75 (1990). Policymaking and confidential employees might justifiably be dismissed on the basis of their political views if the government employer can show that it is "an appropriate requirement for the effective performance of the public office involved.' "an appropriate requirement for the effective performance of the public office

involved.'" Rutan, 497 U.S. at 70n. 5 (*quoting* Branti, 445 U.S. at 518).

In Mt. Healthy, 429 U.S. at 287, the Court established a two-part burden-shifting analysis for evaluating free speech claims. This analysis has also been applied in the political discrimination context. *See* Rodríguez-Rios, 138 F.3d at 24; Acevedo-Díaz v. Aponte, 1 F.3d 62, 67 (1st Cir. 1993). First, the plaintiff must show that he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision. If plaintiff meets this standard, then the defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs. *See* Mt. Healthy City, 429 U.S. at 287.

To meet his burden, Plaintiff must point to evidence in the record that would "**permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus**." [Emphasis added]. Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994); *see also* Rodríguez-Ríos, 138 F.3d at 24; Vázquez v. López-Rosario, 134 F.3d 28, 36 (1st Cir. 1998). In meeting this burden, Plaintiff does not need to produce direct evidence of a politically-based discriminatory animus, inasmuch as a

discriminatory animus may be established with circumstantial evidence alone. Pagán-Cuebas v. Vera-Monroig, 91 F. Supp. 2d 464, 474 (D.P.R. 2000); *see also* Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101-02 (1st Cir. 1997); Acevedo-Díaz, 1 F.3d at 69.

Plaintiff must show that there is a causal connection linking defendants' conduct to his political beliefs. *See* LaRou, 98 F. 3d at 662; Avilés-Martínez, 963 F.2d at 5. Once this burden is met, the defendants must articulate a nondiscriminatory basis for the adverse employment action and must prove by a preponderance of the evidence that the employment action would have been taken without regard to the plaintiff's politics. *See* Mount Healthy, 429 U.S. at 287; Rodríguez-Ríos, 138 F. 3d at 24; Acevedo-García, 30 F. Supp. 2d at 153. "The burden of persuasion is on the [defendants] to establish a Mount Healthy defense. 'Summary judgment [is] warranted . . .only if defendants' evidentiary proffer compels the finding that political discrimination did not constitute a 'but for' cause for the [discharge].'" Acosta-Orozco, 132 F.3d at 103 (*quoting* Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

In Sands v. Starke County Bd. of Comrs. 530 F. Supp. 712, 714, (D.C. N.D. Ind. 1982), the court ruled against the

plaintiff's claim that she was discharged from her position as highway department secretary by the defendant County Board of Commissioners solely because of her political activity in supporting and actively campaigning for a Democratic Commissioner who was defeated in an election. Observing that the only evidence in the record that even supported an inference that the plaintiff's political activities were in some way connected with her discharge were two statements allegedly made by one Commissioner to her that she would lose her job if she supported the defeated Democratic Commissioner in the election, and that the plaintiff offered no evidence whatsoever to link either of the other two Commissioners to having voted not to rehire the plaintiff due to her political activities, the court concluded that the plaintiff had failed to satisfy her burden of proof. Additionally, the court noted that there was substantial evidence that the plaintiff was not satisfactorily performing her job as highway department secretary and that the failure to rehire her was justified on the basis of that evidence.

In the case at hand, **firstly**, the plaintiff has failed to demonstrate that she was engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision, because she acted in a defiant, and insubordinate attitude even with the NPP

administration supervisors, which are allegedly from her same political party. **SUMF No. 1-17**. **Secondly**, the Defendants would certainly have taken the same disciplinary actions regardless of the plaintiff's political beliefs, because the Plaintiff has had a taint record of misbehavior with her co-workers, [**SUMF No. 18-30**]; fraudulent acts such as manipulating the punch entries, [**SUMF No. 50-51**]; and illegal practices such as disclosing confidential CPA Bar Exam grades. [**SUMF No. 31-37**]. She even racially discriminated with Mr. José L. Tapia Manso, a security guard from Puerto Nuevo Security, Inc. [**SUMF No. 46-49**]. **Thirdly**, in the instant case there has not been any adverse employment action against the Plaintiff, because she still working at the State Department. And **fourth**, in our case, the Plaintiff had failed to satisfy her burden of proof of an alleged "political discriminatory animus". **Additionally**, there is substantial evidence that the plaintiff was not satisfactorily performing her job at the Department of State and that the disciplinary actions were justified on the basis of that evidence. [**SUMF No. 1-63**]. Sands, 530 F. Supp. at 714.

**IV.5.  As to Defendants Ferdinand Mercado and Leyda Batiz, the evidence in the case demonstrates their lack of personal involvement in the alleged "facts".**

In Morell v. Department of Social Services, 436 U.S. 658, 691-692 (1978), the Supreme Court held that respondeat superior

may not serve as the basis for imposing §1983 liability. The Court has consistently reaffirmed that ruling. *See e.g.* Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989); St. Louis v. Praprotnik, 485 U.S. 112, 125 (1989). "The Supreme Court's rejection of *respondeat superior* as a basis for § 1983 liability necessarily means that each defendant, whether individual or entity, may be held liable or that defendant's own wrongs. This principle surfaces most prominently in the context of municipal entity and superior officer liability." SCHWARTZ & KIRKLIN, Section 1983 Litigation: Claims, Defenses, and Fees, p. 17 (1986). The rules against *respondeat superior* liability apply in all § 1983 cases. Id. at 317-318 and cases cited therein.

A plaintiff must show that a "casual connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's [politics]." Correa Martínez, 903 F. 2d at 58.

In our case, there is no evidence whatsoever that can even link Ferdinand Mercado and Leyda Batiz with any of the unsupported facts alleged by the Plaintiff. The SUMF does not even mention Ferdinand Mercado and Leyda Batiz as participating "actors" in this scenario. Therefore, any claims against them should be dismissed with prejudice. [**SUMF No. 1-63**]. Jett, 491 U.S. at 737; Correa Martínez, 903 F. 2d at 58.

### IV.6.     Appearing Defendants are entitled to the Qualified Immunity defense.

In the alternative, if this Honorable Court were to find that Plaintiff's rights has been violated (and that the appearing Defendants' actions or omissions were somehow causally related to such violations), the appearing Defendants would assert that they are entitled to the qualified immunity defense.

Qualified immunity is an affirmative defense against liability, which may be raised by state officials sued in their personal capacities. *See* Gómez v. Toledo, 446 U.S. 635, 640 (1980).  The general rule of qualified immunity is that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 427 U.S. 808, 818 (1982).  This rule concentrates on the objective reasonableness of the official's conduct and eliminates from consideration all claims of the official's subjective state of mind.  Id. at 819.  As the qualified immunity defense has evolved it has been stated by the Supreme Court that "it provides ample protection to all but the plainly incompetent." Malley v. Briggs, 475 U.S. 335, 341 (1986).

A Defendant can establish a qualified immunity defense in one of three ways: first, the defense should be sustained if the Court finds that no constitutional right has been violated, even if the allegations of Plaintiff are established; second, even if the interest asserted by the Plaintiff is clearly of a type generally protected by federal law, the Defendant is entitled to immunity if the right was not clearly established; third, even if the contours of the Plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the Defendant may enjoy qualified immunity, if it was objectively reasonable for him to believe that his acts did not violate those rights. *See* Saucier v. Katz, 121 S. Ct. 2151, 2156-2158 (2001).

Whether a Defendant's conduct is "objectively reasonable", so as to entitle him to the defense of qualified immunity turns on the particular facts of the individual case. *See* Iacobucci v. Boulter, 193 F.3d 14, 21 (1st Cir. 1999).

In González-Alvarez v. Rivero-Cubano, 426 F.3d 422, at 429-431 (1st Cir. 2005), dairy farmers brought civil rights action against government officials alleging that regulatory agency's decision to cancel their milk production quotas deprived them of valuable property in violation of Takings Clause. The District Court for the District of Puerto Rico granted a Motion to

Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in favor of Defendants. Farmers appealed and the Court of Appeals, *inter alia*, held that: (1) the statute of limitations for takings claim accrued when regulatory agency issued its decision to cancel farmers' milk production quotas; (2) agency's cancellation of farmer's milk production quota did not constitute taking; and (3) farmer was collaterally estopped from bringing subsequent civil rights claim.

The Court of Appeals in González-Alvarez, id., at 431, affirmed the District Court's decision concerning to qualified immunity, concluding the following:

> Appellants' claim is perhaps more aptly described as a claim that the Puerto Rican government deprived them of their personal property without due process of law. In this vein, appellants argue that this sanction was not mandated, or even permissible, under Puerto Rico law. Presumably, appellants have avoided describing their argument in these terms because they have already raised this argument in the Puerto Rico courts. They are now collaterally estopped from relitigating these issues in federal court. The Puerto *431 Rico Court of Appeals rejected appellant González's claim that ORIL lacked the authority to cancel his milk quotas, and found no evidence that the cancellation was arbitrary, illegal or an abuse of discretion. González-Álvarez, No. KLRA0200084, 2002 WL 1304143, Official Translation at 5. Thus, even if we were to construe appellants' arguments in these due process terms, the key issues have already been litigated in the Puerto Rico courts, and it has been determined that the appellants' milk quotas were cancelled in accordance with Puerto Rico law.

For these reasons, we find that even assuming all allegations by appellants are true, defendant Pedró did not violate appellants' constitutional rights. Thus, Pedró is entitled to qualified immunity, and the district court correctly dismissed appellants' claims on that basis.

In the case at bar, the evidence is clear and convincing that Defendants always acted in good faith, and following the Laws, Rules and Regulations of the State Department and the Commonwealth of Puerto Rico. The best example is shown by the actions made by Leyda Batiz, prior the relocation of all the employees, as explained in **SUMF No. 59-63**. In addition, Marcos Vélez Green also complied always with the laws, as evidenced in the **SUMF No. 58**. Different witnesses, voluntarily testified of his good endeavors at the agency. Id. And regarding Ferdinand Mercado, there is not even one single allegation against him that is sustained by admissible evidence. **SUMF No. 1-63**. Therefore, the good faith is notably and presumed in his favor.

Furthermore, all the Defendants always followed the legal advise of the Department of State Legal Division, as evidenced by the documents provided by the Defendants. **SUMF No. 59-63, and 1-17**. See also, González-Alvarez, 426 F.3d at 431.

Pursuant to the above, in the alternative, this Honorable Court should dismiss the entire case in favor of the Defendants based on qualified immunity grounds.

**IV.7.    Any punitive damages claim should be dismissed.**

Punitive damages can be assessed against a defendant in a § 1983 action when his conduct "involves reckless or callous indifference to the federally protected rights" of plaintiff. <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983); <u>Rowlett v. Anheuser-Busch, Inc</u>., 832 F.2d 194, 205 (1st Cir. 1987). In the present case, **HOWEVER**, as was mentioned in the preceding paragraphs, the evidence is clear and convincing that Defendants always acted in good faith, and following the Laws, Rules and Regulations of the State Department and the Commonwealth of Puerto Rico. The best example is shown by the actions made by Leyda Batiz, prior the relocation of all the employees, as explained in **SUMF No. 59-63**. In addition, Marcos Vélez Green also complied always with the laws, as evidenced in **SUMF No. 58.** Different witnesses, voluntarily testified of his good endeavors at the agency. And regarding Ferdinand Mercado, there is not even one single allegation against him that is sustained by admissible evidence. Therefore, the good faith is notably and presumed in his favor. <u>Id</u>.

Furthermore, all the Defendants always followed the legal advise of the Department of State Legal Division, as evidenced

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT          27
WALESKA MARTÍNEZ GUTIÉRREZ V. BATIZ, ET AL.
CIVIL No. 03-2212 (JAF)

by the documents provided by the Defendants. **SUMF No. 59-63, and 1-17**. <u>González-Alvarez,</u> 426 F.3d at 431. Therefore, any claim for "punitive damages" is frivolous, unfounded and lacks of merit.

**IV.8.     Supplemental law claims should also be dismissed.**

Having demonstrated that no Federal foundational claim exists, this Honorable Court in its respectable discretion should decline to exercise supplemental jurisdiction over Plaintiff's supplemental claims. *See* <u>Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir.1998)</u>("[The balance of competing factors ordinarily weigh[s] strongly in favor of declining jurisdiction over state law claims where the ... federal claims have been dismissed at an early stage in the litigation.").

**V.   CONCLUSION & PRAYER**

From the first **SUMF** to the last, **(SUMF No. 1 thru No. 63)**, analyzed with the case law discussed above, can make us conclude that **SUMMARY JUDGMENT SHOULD BE ENTERED** in favor of Defendants, in order to **DISMISS SUMMARILY WITH PREJUDICE** Plaintiff's Complaint, since there exists no material issue of fact in controversy.

**WHEREFORE**, it is respectfully requested from this Honorable Court that to **GRANT** Defendants' Motion for Summary Judgment & Memorandum In Support, and to **DISMISS** the present <u>Complaint</u> against Defendants, since there exists no material issue of fact in controversy.

**IT IS HEREBY CERTIFIED** that on <u>February 6, 2006,</u> I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: **PETER JOHN PRORRATA, ESQ.,** *Peter John Porrata Law Office*, Capital Center Bldg., South Tower Suite 602, 239 Arterial Hostos Ave., San Juan, PR 00918-1480.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of February, 2006.

**ROBERTO J. SÁNCHEZ-RAMOS**
Secretary of Justice of the
Commonwealth of Puerto Rico

**ARLENE M. GARDÓN-RIVERA**
Acting Deputy Secretary of
Justice
In Charge of Litigation

**JO-ANN ESTADES-BOYER**
Director, Federal
Litigation Division

<u>S/José Enrico Valenzuela-Alvarado</u>

**JOSÉ ENRICO VALENZUELA-ALVARADO**
FEDERAL LITIGATION DIVISION
U.S.D.C.-P.R. Bar No. 220104

**DEPARTMENT OF JUSTICE OF THE
COMMONWEALTH OF PUERTO RICO**
Counsels for Defendants
P.O. Box 9020192
San Juan, PR  00902-0192
Tel. (787) 721-8010
Fax. (787) 723-9188
Email:
jvalenzuela@justicia.gobierno.pr
enricovalenzuela@hotmail.com

WALESKA MARTÍNEZ GUTIÉRREZ V. BATIZ, ET AL.
CIVIL No. 03-2212 (JAF)